A. MARTÍNEZ & Co., demandante y recurrente, *v.* LONG CONSTRUCTION Co. y LEONARD D. LONG, demandados y recurridos.

*Número*: R-72-155      *Resuelto*: 3 de diciembre de 1973

*Gustavo Adolfo Del Toro* y *José Ramón Freyre,* abogados de la recurrente; *Brown, Newsom & Córdova* e *Iván Díaz de Aldrey,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Ambas corporaciones litigantes se dedican a la industria de la construcción. La recurrente A. Martínez & Co. aceptó un subcontrato de la recurrida Long Construction Company obligándose a ejecutar para ésta obras y servicios en el edificio conocido como San Juan Darlington por precio convenido de $329,640.00. Terminadas las obras, la subcontratista Martínez reclamó a Long la suma adicional de $37,353.98 por trabajo extra no comprendido en las especificaciones del contrato original. Long Construction aceptó la revisión y liquidación del contrato por Martínez, no obstante expresar que dicha labor

extra no aparecía comprobada por las órdenes de cambio aceptadas por la primera, y a su vez dedujo del total reclamado $12,974.95 por concepto de cargos atrasados debidos por Martínez, que justificó con una lista detallada de los mismos, resultando un balance de $23,386.30 por cuyo importe envió anexo a la carta-liquidación[1] un cheque certificado a su subcontratista con un concepto de endoso al dorso que dice en inglés y parte en español:

"Endorsement of this check acknowledges payment in full as enumerated hereon

"El endoso de este cheque certifica el pago total como se detalla

"Payment in full of contract dated Dec. 7, 1964, between Long Construction Company and A. Martínez & Co., Inc., including all extra work charges of A. Martínez & Co., Inc. and all back charges due by A. Martínez & Co., Inc. to Long Construction Company as per Long Construction Company letter dated December 14, 1967, to A. Martínez & Co., Inc."

La recurrente Martínez tachó los particulares del transcrito concepto de endoso los cuales sustituyó con otro que dice:

"Payment on account final liquidation dated Dec. 5, 1966, Ref our 16.248 Long Construction Check #4632 dated Dec. 9, 1966."

Bajo los endosos el referido cheque muestra una inscripción en sello de goma que lee:

---

[1] El texto original de la liquidación hecha por Long es el siguiente:

"Contract Price . . . . . . . . . . . . . . . . . $329,640.00
"Extra work that you stated is due but cannot be proven by our approved change orders . . . . . . . . . . 37,353.98

"Total amount of billing . . . . . . . . . . . . $366,993.98
Less: Payments previously made by us . . . . . . . $330,632.73

"Amount you claim to be due . . . . . . . . . . $ 36,361.25
"Less: Back charges due us, which are enclosed herewith on 30 legal sheets of paper and fully itemized 12,974.95
"Balance due you (check enclosed to cover full payment of our entire agreement with you) . . . . . . . . $ 23,386.30"

"For Deposit in Account
Pay to the order of
THE ROYAL BANK OF CANADA
Santurce Branch
All prior endorsements guaranteed
A. MARTINEZ & CO., INC."

Martínez retuvo el cheque que depositó en su cuenta bancaria, y escribió a Long que aceptaba el mismo como abono o pago parcial. Eventualmente Martínez inició acción civil reclamando de Long una diferencia de $14,100.23 que alega subsistente de las mutuas liquidaciones y pagos. El tribunal de instancia dictó sentencia sumaria desestimando su demanda, fundada su decisión en la doctrina de acuerdo y pago (*accord and satisfaction*).

Notamos que fue la acreedora Martínez la que inyectó el elemento de condición ilíquida del contrato al valorar y facturar por las obras extras, incluyendo en su estado de cuenta la suma de $37,353.98 por dicha partida. La subcontratista no estableció que esta cantidad hubiese sido objeto de mutua aceptación por las partes antes de ser incluida en el estado de cuenta servido a Long; por el contrario en la liquidación que Long acompañó con su cheque se dice que ésta no tenía comprobantes de aceptación de dichos cambios o extras en la ejecución del subcontrato. Si a pesar de ello Long acepta y paga por dicha labor extra, no consideramos opresiva su acción incorporando a la liquidación una partida de $12,974.95 por cargos atrasados con una extensa relación donde se detallan y particularizan los mismos.

Nos hemos detenido a fijar la razón del estado ilíquido del contrato y la ausencia de opresión de la deudora sobre su acreedora como factores a estimar cuando se invoca la doctrina de *accord and satisfaction*. Fue en *López* v. *South Porto Rico Sugar Company*, 62 D.P.R. 238 (De Jesús, J., 1943), que se dio carta de naturaleza a dicha norma de dere-

cho común que en cierto modo opera en un área de contratación rápida propia de nuestros días y es más asequible para la terminación en corto plazo de diferencias, incertidumbres y mutuas reclamaciones que el contrato de transacción definido en el Art. 1709 del Código Civil (31 L.P.R.A. sec. 4821) el cual generalmente nace de un pleito pendiente o a punto de comenzar. Según la sentencia del Tribunal Supremo de España de 17 de octubre de 1924, el contrato de transacción requiere una cuestión anterior que le dé vida, ya sea judicial o extrajudicial, porque no sólo tiene lugar para poner término a un pleito ya comenzado, sino para evitar la provocación de una cuestión judicial. Manresa, *Comentarios al Código Civil Español*, ed. 1951, tomo 12, pág. 97.

Por su viabilidad, su liberación de requisitos formales y la prontitud de su acción suplantando la contienda y la incertidumbre por la concurrencia de opuestas pretensiones, podríase llamar al *accord and satisfaction* la transacción al instante. Hallándose sin liquidar las partidas de labor extra (órdenes de cambio) reclamadas por Martínez, y la de cargos atrasados reclamados por Long, era flúida e incierta la cuantía representativa del justo balance que saldaría el contrato, y el estado ilíquido es precisamente el campo de acción de la doctrina de acuerdo y pago (*accord and satisfaction*). En ausencia de opresión o indebida ventaja de parte del deudor y mediando circunstancias claramente indicativas para el acreedor de que el cheque remitido lo era en pago y saldo total del balance resultante de la liquidación final del contrato, están presentes todos los requisitos de este modo de extinción de las obligaciones acogido en *López* v. *South Porto Rico Sugar Co.*, supra. La aceptación del cheque por el acreedor bajo estas premisas equivale a dar su conformidad a la liquidación del contrato que lo acompañaba; y su acción unilateral tachando el concepto de endoso sustituyéndolo por otro de su propia redacción y escribiendo una carta en que expresa aceptar el cheque como abono o pago parcial fue un ejercicio inútil.

"Está generalmente establecido que si un cheque con anotación indicativa de que se ofrece en pago total o transacción de una reclamación disputada o sin liquidar, se envía por el deudor a su acreedor, y estos extremos se aclaran al acreedor, éste último no puede evadir el dilema de devolver el cheque o retenerlo en pago total de su acreencia con simplemente borrar, suprimir o tachar las palabras que expresa dicho concepto de endoso." 1 Am.Jur.2d (*Accord & Satisfaction*), Sec. 22, pág. 321.

■ Es obvio que el acreedor que acepta dinero con claro entendimiento de que representa una propuesta para la extinción de la obligación, no puede desvirtuar el acuerdo de pago fraseando a su gusto el recibo o el endoso en el cheque. El contrato de acuerdo y pago (*accord and satisfaction*), al igual que su paralelo de mayor solemnidad la transacción, es accesorio, consensual, bilateral y oneroso. Scaevola, *Código Civil*, ed. 1953, tomo 28, págs. 272 y ss. Se perfecciona con la simple retención del cheque por el acreedor que con ello expresa su consentimiento, sin que el acto unilateral de éste tendiente a modificarlo, una vez aceptado el cheque, produzca consecuencias jurídicas. No incidió la sala de instancia al conceder la sentencia sumaria solicitada por la parte recurrida.

*Se confirmará la sentencia revisada.*

El Juez Asociado Señor Rigau no intervino.