EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rafael Adorno Maldonado<br><br>Peticionario<br><br>v.<br><br>Cooperativa de Seguros Múltiples de Puerto Rico<br><br>Recurrido | Certiorari<br><br>2021 TSPR 98<br><br>207 DPR \_\_\_\_ |

Número del Caso: CC-2020-121

Fecha: 30 de junio de 2021

Tribunal de Apelaciones:

    Panel XI

Abogados de la parte peticionaria:

    Lcda. Luz V. Quiñones Rivera
    Lcdo. Jorge L. Hernández Rosich

Abogado de la parte recurrida:

    Lcdo. Víctor Torres Luna

Materia: Sentencia con Opinión de conformidad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rafael Adorno Maldonado<br><br>Peticionario<br><br>v.<br><br>Cooperativa de Seguros Múltiples de Puerto Rico<br><br>Recurrida | CC-2020-0121 | Certiorari |

SENTENCIA
(Regla 50)

En San Juan, Puerto Rico, a 30 de junio de 2021.

Examinados los méritos del escrito de *certiorari* presentado por la parte peticionaria, y ya expedido el recurso el 1 de julio de 2020, se revoca la sentencia emitida el 10 de diciembre de 2019 por el Tribunal de Apelaciones sin ulterior procedimiento conforme a la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B. Por consiguiente, se devuelve el caso al Tribunal de Primera Instancia para evaluar y resolver el mismo en conformidad con lo resuelto por este Foro en Feliciano Aguayo v. MAPFRE Panamerican Insurance Company, 2021 TSPR 73, 207 DPR ___ (2021).

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión de conformidad.

La Jueza Presidenta Oronoz Rodríguez hace contar las siguientes expresiones, a las cuales se une la Jueza Asociada señora Pabón Charneco: "La Jueza Presidenta Oronoz Rodríguez disiente del trámite que adoptó este Tribunal para resolver este caso por medio de una Sentencia escueta, de un párrafo, en la cual no se exponen los hechos particulares del caso ni se lleva a cabo el análisis jurídico aplicable.

Si bien una Mayoría de este Tribunal tomó una postura en Feliciano Aguayo v. MAPFRE Panamerican Insurance Company, 2021 TSPR 73, 207 DPR ____ (2021), sobre la normativa aplicable a los casos de seguros producto de los huracanes Irma y María, la Sentencia que hoy se emite no dispone de un tracto fáctico expreso que le permita a las partes y a los foros recurridos evaluar si en este caso se incumplió con lo dispuesto por este Tribunal en Feliciano Aguayo v. MAPFRE Panamerican Insurance Company, supra.

No representa los mejores intereses de las partes, ni de los foros inferiores el despachar estos asuntos sin un análisis concienzudo. Algunos de estos casos llevan más de un año ante la consideración de este Tribunal por lo que corresponde que ejerzamos nuestra función constitucional, mediante el análisis individualizado que ameritan.

La determinación de si en un caso particular se configuraron los requisitos de la figura de pago en finiquito descansa en sus circunstancias particulares. Por lo tanto, no puedo estar de acuerdo con que decidamos de un plumazo, mediante una Sentencia genérica, el mismo resultado para todo caso con una controversia similar. Por entender que el mecanismo que adoptó este Tribunal para disponer de la controversia es uno inadecuado y contrario a nuestro mandato constitucional, me veo compelida a disentir".

La Jueza Asociada señora Pabón Charneco hace constar la expresión siguiente: "Por los fundamentos que he expuesto en *Feliciano Aguayo v. MAPFRE Panamerican Insurance Company*, 2021 TSPR 73, 207 DPR ___ (2021), sobre la aplicabilidad de la defensa de pago en finiquito en el contexto de una reclamación de seguros, disiento. Por consiguiente, proveería No Ha Lugar al recurso presentado por la parte peticionaria".

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rafael Adorno Maldonado<br><br>Peticionario<br><br>v.<br><br>Cooperativa de Seguros Múltiples de Puerto Rico<br><br>Recurrida | CC-2020-0121 | Certiorari |

Opinión de conformidad emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 30 de junio de 2021.

Estoy conforme con la determinación que hoy emite este Tribunal a la luz de Feliciano Aguayo v. Mapfre Panamerican Insurance Company, 2021 TSPR 73, 207 DPR ___ (2021). La disonancia que emergió del choque entre asegurados y aseguradoras tras el paso del huracán María halló su crescendo en los tribunales mediante la aplicación desmesurada y autómata del pago en finiquito por la vía sumaria. Ello, con la consecuencia nefasta de denegarle a decenas de reclamantes su día en corte bajo un análisis del Derecho que, conforme ya determinó este Tribunal, apenas rozó los elementos mínimos de la transacción al instante dentro del contexto específico de la industria de seguros.

Mediante la sentencia que emitimos hoy, reafirmamos que la conformación de la doctrina del pago en finiquito exige la concurrencia de requisitos que van más allá de la mera emisión y el cobro de un cheque, y que su manifestación en una controversia relacionada a la industria de seguros depende, además, del cumplimiento cabal con las exigencias de buena fe y trato justo que le rigen. Por estar conforme con tal proceder, estimo prudente repasar cómo estos lineamientos aplican a la controversia ante nuestra consideración, la cual se replica a través de un sinnúmero de casos que hoy son atendidos sin mayor dilación por este Tribunal.

## I

El 13 de septiembre de 2018, el Sr. Rafael Adorno Maldonado (señor Adorno Maldonado) presentó una demanda por incumplimiento de contrato, mala fe y dolo en contra de la Cooperativa de Seguros Múltiples de Puerto Rico (Cooperativa). En ésta, indicó que el huracán María provocó graves daños a su propiedad, la cual estaba cobijada por una una póliza de seguro de propiedad expedida por la Cooperativa. Relató que, tras presentar una reclamación, la Cooperativa subvaloró y denegó daños que estaban cubiertos, no investigó las pérdidas adecuadamente y no emitió un pago justo. Así, solicitó la cantidad de $106,000.00 por concepto de daños a la propiedad y $25,000.00 por los daños sufridos a causa de los actos de la Cooperativa.

En respuesta, la Cooperativa presentó una <u>Moción de sentencia sumaria</u>. Sostuvo que, tras analizar la reclamación, emitió un cheque por la cantidad de $1,616.00 como pago total y final, el cual el señor Adorno Maldonado firmó y cambió. Añadió que el señor Adorno Maldonado firmó una <u>Declaración jurada en comprobación de pérdida</u>, mediante la cual aceptó tal cantidad como pago por la reclamación. Razonó que se configuró un pago en finiquito.[1]

En su <u>Moción en oposición a solicitud de sentencia sumaria</u>, el señor Adorno Maldonado sostuvo que la doctrina de pago en finiquito tiene que analizarse dentro del contexto del derecho de seguros, particularmente porque la Cooperativa incurrió en prácticas desleales prohibidas en la industria. Sostuvo que existen controversias de hechos esenciales que impiden el uso de la sentencia sumaria. Objetó el tamaño de las letras al dorso del cheque, la falta de orientación al recibirlo y la presión que ejerció la Cooperativa para que firmara la <u>Declaración jurada en comprobación de pérdida</u> a cambio del cheque. Afirmó que, al momento de cambiar el cheque, desconocía de la posibilidad de devolverlo y de las consecuencias de depositarlo.[2]

---

[1] La Cooperativa acompañó su escrito con una copia de la póliza, el formulario básico, el cheque firmado por el señor Adorno Maldonado, la <u>Declaración jurada en comprobación de pérdida</u> también firmada por el señor Adorno Maldonado y una comunicación de la Oficina del Comisionado de Seguros.

[2] El señor Adorno Maldonado acompañó su moción con una declaración jurada en la cual, en síntesis, manifestó que agentes de la Cooperativa le dijeron que tenía que firmar un documento para recibir el cheque, que no le explicaron

Así trabada la controversia, el Tribunal de Primera Instancia emitió una Resolución mediante la cual denegó la disposición del pleito por la vía sumaria. Por voz del Hon. Juez Eduardo R. Rebollo Casalduc, el foro primario determinó que existían ciertas controversias de hechos materiales que impedían la resolución del pleito sumariamente, a saber: si el señor Adorno Maldonado fue apercibido efectivamente de las consecuencias de cambiar el cheque y si se le advirtió de la posibilidad de solicitar una reconsideración del ajuste. Concluyó que el lenguaje al dorso del cheque no era suficiente para determinar que el señor Adorno Maldonado lo aceptó, retuvo y cambió como un pago final.

En desacuerdo, la Cooperativa presentó una moción de reconsideración en la cual sostuvo que demostró que no existe controversia alguna sobre los hechos que configuran el pago en finiquito. Adujo que el lenguaje al dorso del cheque y la Declaración jurada en comprobación de pérdida constituyen la advertencia sobre la finalidad del pago. Planteó que no es un requisito jurisprudencial de la doctrina de pago en finiquito que se advierta sobre las consecuencias de cambiar el cheque. El Tribunal de Primera Instancia la declaró no ha lugar.

Todavía inconforme, la Cooperativa presentó una petición de certiorari ante el Tribunal de Apelaciones, en

que no podía cambiar el cheque si no estaba de acuerdo con el monto o que aceptarlo constituía una renuncia a su reclamo y que no le orientaron sobre el procedimiento de reconsideración.

la que arguyó que las controversias de hechos identificadas por el foro primario no son requisitos para que se configure un pago en finiquito. Reiteró que no tiene deber de advertir sobre las consecuencias de cambiar un cheque o sobre el derecho a solicitar reconsideración cuando se ofrece un pago para resolver una reclamación.

Así las cosas, el Tribunal de Apelaciones emitió una Sentencia y revocó la Resolución del Tribunal de Primera Instancia. El foro apelativo intermedio acogió la posición de que advertirle a la parte de las consecuencias de aceptar el cheque no es un requisito necesario para que se configure el pago en finiquito y determinó que el Tribunal de Primera Instancia contaba con todos los elementos para determinar la procedencia de esta figura.[3]

Disconforme, el señor Adorno Maldonado solicitó la reconsideración y apuntó a que su Declaración jurada puso en controversia elementos esenciales de la figura de pago en finiquito como la aceptación del pago y la ausencia de ventaja u opresión indebida. Reafirmó que la Cooperativa

_____

[3]La Hon. Jueza Grana Martínez emitió un voto disidente en el cual indicó que la figura de pago en finiquito exige que la oferta sea de buena fe, así demostrado mediante el análisis de los elementos subjetivos de los actos anteriores, coetáneos y posteriores a la contratación. Asimismo, añadió que debe estar ausente cualquier ventaja u opresión, lo que, en este caso, podía manifestarse a través de un desconocimiento de una materia técnica de seguros o el desosiego de un evento histórico. Concluyó con el señalamiento de que, para aceptar un pago mucho menor al esperado, se requiere un completo y absoluto entendimiento de que no hay otra alternativa viable y que el pago aceptado es total y final, lo cual no se cumple mediante un sello colocado al reverso de un cheque.

incurrió en prácticas desleales al no orientarle adecuadamente sobre la finalidad del pago o el proceso de reconsideración y al hacerle firmar un relevo como condición para entregarle el cheque. Razonó que no pudo haber aceptado el pago como uno final si no existió un consentimiento informado y libre de vicios. El Tribunal de Apelaciones la declaró no ha lugar.

En consecuencia, el señor Adorno Maldonado acudió ante este Tribunal mediante una petición de certiorari. En ésta, argumentó que la controversia versa sobre una parte débil que cambió un cheque por una cantidad significativamente menor a la que tenía derecho por la falta de orientación y la ventaja indebida de la aseguradora. Sostuvo que la documentación que presentó la Cooperativa está desprovista de lenguaje claro y directo sobre la naturaleza del pago como uno total, completo y definitivo. Añadió que existía controversia sobre su intención y entendimiento al endorsar el cheque. Además, manifestó que la Cooperativa falló en demostrar el cumplimiento cabal con los requisitos de la figura de pago en finiquito y las obligaciones de la industria.

Por su parte, la Cooperativa argumentó que demostró la aplicación del pago en finiquito y que su configuración no toma en consideración la existencia o no de prácticas desleales. Reiteró que no tiene obligación de advertir sobre el derecho a rechazar la oferta o a reconsiderar la determinación y que todos sus actos fueron indicativos de

que el pago se ofreció como uno total, completo y definitivo de la reclamación.

Este Tribunal expidió el recurso de certiorari el 1 de julio de 2020. Con el beneficio de la comparecencia de ambas partes, es necesario reafirmar que en esta etapa y bajo el crisol de lo establecido en Feliciano Aguayo v. Mapfre Panamerican Insurance Company, supra, no procede la disposición sumaria de la controversia bajo la doctrina del pago en finiquito.

**II**

**A.**

Debido a su gran importancia, su complejidad y el efecto que tiene en la economía y la sociedad, la industria de seguros está revestida de un alto interés público y, consecuentemente, ha sido ampliamente reglamentada por el Estado. Maderas Tratadas v. Sun All., 185 DPR 880, 896 (2012); Jiménez López v. Simed, 180 DPR 1, 8 (2010). Tal reglamentación se codificó, principalmente, en el Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, 26 LPRA sec. 101 et seq. (Código de Seguros). De forma supletoria, también se reglamenta mediante las disposiciones del Código Civil. R.J. Reynolds v. Vega Otero, 197 DPR 699, 707 (2017).

En específico, el Código de Seguros define el contrato de seguros como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso

incierto previsto en el mismo". 26 LPRA sec. 102. Esto es, un acuerdo mediante el cual el asegurador asume ciertos riesgos determinados a cambio de una prima o cuota periódica y, en consecuencia, se obliga a responder por la carga económica que recaiga sobre el asegurado de ocurrir alguno de los eventos especificados en el contrato. ECP Inc. v. Oficina del Comisionado de Seguros, 205 DPR __ (2020). Por consiguiente, "su propósito es indemnizar y proteger al asegurado mediante el traslado del riesgo a la aseguradora si ocurre un evento específicamente pactado en el contrato." R.J. Reynolds v. Vega Otero, supra.

En lo que nos concierne, de ocurrir tal evento y presentarse una reclamación, el Art. 27.161 del Código de Seguros, 26 LPRA sec. 2716b, cataloga una serie de actos en los que la aseguradora no puede incurrir durante al trámite de una reclamación. Estas prohibiciones se intitulan prácticas desleales. Entre éstas, se encuentran: (1) hacer falsas representaciones de los hechos o de los términos de una póliza, relacionados con una cubierta en controversia; (2) rehusarse a pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible; (3) no intentar de buena fe llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad; (4) obligar a los asegurados o reclamantes a entablar pleitos para recobrar bajo los términos de una póliza, porque se le ha ofrecido al asegurado o reclamante una cantidad sustancialmente menor que la

cantidad que podría ser recobrada finalmente en un litigio o porque se le ha negado incorrectamente la cubierta bajo los términos de la póliza; (5) tratar de transigir una reclamación por una cantidad menor que la que el asegurado o reclamante razonablemente tenga derecho, basado en la literatura o material impreso que se le acompañó o se hizo formar parte de la solicitud; (6) negarse a ofrecer una explicación razonable de los términos de una póliza en relación con los hechos y la ley aplicable para la denegación de una reclamación o de una oferta de transacción, y (7) requerir que el asegurado o reclamante firme un relevo que pueda ser interpretado como que releva al asegurador de aquellas obligaciones contractuales que no fueron objeto de la transacción.

Cónsono, y como resultado de los conflictos entre las aseguradoras y los asegurados tras el paso del huracán María, se creó la Carta de Derechos del Consumidor de Seguros, la cual se integró al Código de Seguros como el Art 1.120, 26 LPRA sec. 118.[4] Esta tiene el fin de informar a los asegurados de sus derechos, así establecidos en el Código de Seguros y su reglamento. Según se destacó en <u>Feliciano Aguayo v. Mapfre Panamerican Insurance Company</u>, supra, la Carta enfatiza que el asegurado goza de una amplia gama de derechos, por ejemplo:

---

[4] La Carta de Derechos del Consumidor de Seguros se integró al Código de Seguros mediante la Ley Núm. 14-2020.

(e) Derecho a que quien le gestiona su póliza le provea una **orientación clara** y completa sobre la cubierta, beneficios, límites y exclusiones de la póliza, así como los deberes y obligaciones del asegurado.

. . . . . . .

(i) Derecho a que el asegurador actúe de **buena fe**, de forma justa y equitativa **al evaluar y resolver su reclamación.**

**(j) Derecho a que el asegurador le envíe su oferta con desglose del ajuste para su evaluación, antes de recibir un cheque que usted no ha aceptado, o concurrentemente con el cheque, sin que se entienda que el simple recibo del mismo significa una renuncia a sus reclamaciones.**

. . . . . . .

(o) Derecho a solicitar una reconsideración a la determinación del asegurador respecto a su reclamación, y que la misma sea atendida y resuelta dentro del término de 30 días de presentada la solicitud. (Énfasis suplido).

Asimismo, el Comisionado de Seguros, ente dedicado a supervisar la industria de los seguros y asegurar su cumplimiento con las disposiciones del Código de Seguros, emitió una Carta Circular el 2 de octubre de 2017 (Núm. CC-2017-1911D). Mediante ésta, exigió el cumplimiento estricto con las disposiciones del Código de Seguros y su reglamento, particularmente aquellas relacionadas a las prácticas prohibidas y los métodos razonables para la investigación y el ajuste de las reclamaciones. A su vez, enfatizó la necesidad de que, durante tales trámites: se provea una orientación adecuada y precisa a los reclamantes; se hagan manifestaciones y representaciones ciertas y correctas sobre los hechos y los términos de una póliza y se ofrezcan

explicaciones razonables para la denegación de una reclamación u oferta de transacción; se efectúe una investigación razonable y se realice un ajuste justo y equitativo de la reclamación; se ofrezca al reclamante aquellas cantidades que dentro de los términos de la póliza sean justas y razonables, y sobre las cuales el reclamante razonablemente tenga derecho, sin tratar de transigir la reclamación por una cantidad irrazonablemente menor a la que se tiene derecho, y que, cuando se requiera la firma de un relevo, el mismo no pueda ser interpretado como que se releva de aquellas obligaciones que no fueron objeto de la transacción, entre otras.

**B.**

El primer contacto entre Puerto Rico y la doctrina del pago en finiquito tomó lugar en la Corte Suprema de los Estados Unidos en el caso City of San Juan v. St. John's Gas Co., 195 US 510, 521 (1904). Aunque, finalmente, ello no fue el ratio decidendi, el Tribunal Supremo federal arribó a la conclusión de que, aunque no le fue presentada autoridad española alguna al respecto, "we cannot hesitate to conclude that the doctrine in question prevailed also in the Spanish civil law in force in Porto Rico".[5] Íd.

_____

[5]Al respecto, es necesario señalar que "[t]he Supreme Court did not state the reasoning that led the court to the conclusion that the common law doctrine of accord and satisfaction and the doctrine of datio in solutum found in the Justician Code of 534 are related to each other, and that the latter is "enforced" in the Code of Napoleon of 1804, therefore, "prevailed also" in the Spanish law so as to be "in force" in Puerto Rico. No other source of

No obstante, cuando este Tribunal examinó por primera vez el pago en finiquito en Abarca Sanfeliz v. Bank of Nova Scotia, 46 DPR 931 (1934), este Foro mostró dudas sobre la incorporación de esta doctrina a nuestro ordenamiento. De hecho, en aquel entonces, expresamos preocupación ante la posibilidad de trasplantar a nuestro Derecho tal doctrina legal y sus conceptos sin investigar o estudiarlo más a fondo. A pesar de ello, aun "suponiendo que estuviese en vigor en Puerto Rico", este Tribunal rechazó la aplicación del pago en finiquito a los hechos, pues "[p]ara que el convenio que se conoce con el nombre de accord and satisfaction pueda tener validez, es necesario que haya mediado causa. Es preciso también que el acreedor que cede su reclamación en todo o en parte reciba algún beneficio o que el convenio resulte en detrimento del deudor, aunque sea en grado mínimo." Íd.

Casi una década después, en López v. South P.R. Sugar Co., 62 DPR 238 (1943), este Tribunal finalmente reconoció

---

authority was cited besides the excerpt of the Journal du Palais, a digest (Répertoire Genéral) of the French law covering from 1791 to 1850, where the cited sources were obviously taken from, and which literally translated reads as follows: If a debtor and a creditor consent that one will give and the other will receive one thing instead of another, such payment is valid and extinguishes the obligation (L. 17, C. De Solut). That is what is called giving in payment (datio in solutum) [...][.]" O. Soler Bonnin, A Case of Legal Transplanting: Datio in Solutum et al v. Accord and Satisfaction, 25 REV DER. PR. 421 (1986).

que la doctrina, en efecto, estaba en vigor en Puerto Rico.[6] La determinación se fundamentó principalmente en dos (2) razones: (1) porque así lo resolvió el Tribunal Supremo federal en City of San Juan v. St. John's Gas Co., supra, y (2) porque, aunque no se encontró cosa alguna sobre la doctrina en las leyes españolas o las obras de sus comentaristas, el estado de Luisiana tiene un código civil parecido al nuestro, donde no existe un precepto legal que

---

[6]Aunque cabe destacar que comentaristas contemporáneos se vieron escépticos a que dicha doctrina "haya sido realmente incorporada al Derecho vernáculo", pues "[e]llo no solo sería superabundante sino contraproducente, habida cuenta que, por una parte, el Derecho puertorriqueño dispone de instituciones propias, como queda dicho, que cumplen satisfactoriamente el cometido de aquélla, y, por otra parte, la doctrina de accord and satisfaction se encuentra estructurada conforme a los principios formalistas en que descansa el Common Law, incompatibles con los consensualistas en que se basa el Derecho Civil". Guaroa Velázquez, El Derecho puertorriqueño de las obligaciones durante la primera mitad del siglo XX, 23 REV. JUR. U.P.R. 285, 298-299 (1954).

Precisamente, al comparar esta realidad con el derecho común, se desprende que "[a]lthough it is generally conceded by legal doctrine that the assent of the parties can be either expressly manifested or implied by the facts, in the latter case the existence of assent is recognized only when the facts are conclusive. Only in exceptional is the assent implied by law without regard to the true intention of the parties. In the Puerto Rican Civil Code, as well as in the Spanish Civil Code, no provision similar to that in Article 1818 of the Louisiana Civil Code of 1870 is found. On the contrary, the courts are provided with a specific mandate to discover what was the real intention of the parties and if this cannot be ascertained according to the rules therein established, then the contract shall be void. It seems, then, that if these principles are to be applied to the facts of the cases previously discussed, it is not possible to attribute to the creditor the intention of accepting a check in "full payment" when his manifest intention is contrary to it." O. Soler-Bonín, op cit., pág. 447.

expresamente la sancione, y allí se aplica la doctrina. Equiparándolo al contrato de transacción, este Foro delineó los elementos básicos de la doctrina, a saber:

> (1) Una reclamación ilíquida o sobre la cual exista controversia bona fide; (2) un ofrecimiento de pago por el deudor; y (3) una aceptación del ofrecimiento de pago por el acreedor. López v. South P.R. Sugar Co., supra, pág. 245.

A su vez, este Tribunal pautó que cuando el acreedor "recibe del deudor y hace suya una cantidad menor que la que él reclama, el acreedor está por ello impedido de reclamar la diferencia entre lo recibido y lo por él reclamado. El acreedor, al hacérsele el ofrecimiento de pago sujeto a la condición de que al aceptarlo se entenderá en saldo de su reclamación, tiene el deber de devolver al deudor la cantidad ofrecida, si no está conforme con dicha condición." Ello, con el fin de que el acreedor no se aproveche de la oferta de buena fe que hace el deudor.[7] Íd.

Posteriormente, el tema fue revisitado en Pagán Fortis v. Garriga, 88 DPR 279 (1963), donde el dictamen se ancló

---

[7]Desde entonces, el pago en finiquito se ha desarrollado a través de nuestra jurisprudencia, exclusivamente ante hechos en los que existe un acuerdo y un cumplimiento simultáneo, así parecidos a los hechos de López v. South P.R. Sugar Co., supra. J.R Vélez Torres, Derecho de Obligaciones, 2da ed., Puerto Rico, Programa de Educación Jurídica Continua, 1997, pág. 243. Ello, sin embargo, se ha hecho sin consideración ulterior al raciocinio que introdujo la doctrina a nuestro ordenamiento, las fuentes de autoridad citadas en López v. South P.R. Sugar Co., supra, o sus implicaciones doctrinales y prácticas. O. Soler-Bonín, op cit., pág. 423.

en jurisprudencia anglosajona y, posteriormente,[8] A. Martínez & Co. v. Long Const. Co., 101 DPR 830 (1973). En éste último, se denominó esta doctrina como "la transacción al instante" y se trazaron paralelas entre ésta y el contrato

---

[8]Interesantemente, y pertinente al caso ante nuestra consideración, en Carrasquillo v. Lippit & Simonpietri, Inc., 98 DPR 659 (1970), este Tribunal rechazó que una aseguradora quedara relevada de su responsabilidad de compensar a un asegurado tras entregarle un cheque. En aquel entonces, se determinó que

> La prueba demuestra, sin embargo, que no hubo un entendido claro e indubitable sobre el alcance de la transacción realizada; que mientras el recurrido asumía que sólo cubría los daños del vehículo, Macías, de conformidad con la práctica conocidamente establecida por las aseguradoras de transar en un solo acto todos los daños incurridos, entendió que así lo había logrado al obtener la firma del recurrido en el impreso de relevo que su secretario Rodríguez llenó a maquinilla. Concluimos, por lo tanto, que no habiéndose logrado un entendido entre las partes con respecto a la naturaleza y alcance de la propuesta transacción, en derecho ésta no se realizó y por lo tanto no puede prevalecer. Íd., pág. 669.

Habiéndose decidido este caso justo en medio de las determinaciones más prominentes sobre el pago en finiquito, comentaristas especularon que este Tribunal evadió atender la doctrina directamente, resolviendo bajo otros argumentos legales para "balancear de forma justa el conflicto existente entre las compañías aseguradoras y el asegurado o demandante". J. Sifre, Jurisprudencia: Luis H. Carrasquillo v. Lippitt & Simonpietri, Inc., 40 REV. JUR. U.P.R. 235, pág. 242 (1971). Es decir, "la desigualdad de poder existente entre ambas partes en lo que respecta a la contratación". Íd. De esta forma, se mantenía la flexibilidad de ver los casos por sus propios méritos, resolviendo en justicia según los hechos, y se exigía un "conocimiento más amplio a las partes sobre lo que están transando. El efecto de esto puede ser de gran importancia ya que establece normas más específicas al menos en cuanto a transacción de compañías aseguradoras se refiere". Íd., pág. 243.

de transacción.[9] Íd., pág. 834. Más importante aún, este caso estableció dos (2) elementos adicionales en el análisis de la doctrina: **la ausencia de opresión o ventaja indebida de parte del deudor** y la existencia de circunstancias "**claramente indicativas para el acreedor** de que el cheque remitido lo era en pago y saldo total del balance resultante de la liquidación final del contrato". (Énfasis suplido). Íd. Asimismo, se estableció que el acreedor que acepta o simplemente retiene el pago con **claro entendimiento**[10] de que éste representa una propuesta para poner fin a la obligación, expresa su consentimiento. Cabe señalar que este caso representa la única instancia en la que este Tribunal encontró satisfecho los requisitos de la doctrina de pago en finiquito y así lo resolvió.

---

[9]Tal comparación, precisamente, va de la mano con ciertas críticas que ha recibido el uso de la doctrina de pago en finiquito en Puerto Rico. E.M. Colón García et. al., Emergence of New Legal Creations, 32 Rev. Jur. U.I.P.R. 291, 293 (1998). Esto, particularmente, porque propende un resultado que igual pudiera obtenerse mediante una figura que ya existe en nuestro ordenamiento por la vía legislativa: el contrato de transacción. Vélez Torres, op cit., pág. 248.

Por otra parte, Vélez Torres, quien reitera que nunca se justificó la necesidad de adoptar el accord and satisfaction, precisa que A. Martínez & Co. v. Long Const. Co, supra, hubiera tenido un resultado idéntico de sólo haberse aplicado la doctrina de los actos propios. J.R. Vélez Torres, La presencia de los sistemas de derecho civil y de derecho anglosajón en la jurisprudencia puertorriqueña, 39 Rev. Jur. U.I.P.R. 67, 72 (2004).

[10]Es necesario indicar que, en su obra, Vélez Torres equiparó el concepto de "claro entendimiento" con el que el acreedor tenga "plena conciencia" de que el pago le fue remitido en concepto de saldo total. Vélez Torres, op cit., pág. 247.

Con posterioridad, HR Elec., Inc. v. Rodríguez, 114 DPR 236 (1983), brindó la oportunidad de aclarar que la mera retención del cheque durante un tiempo razonable no es suficiente para constituir una aceptación, pues también deben ocurrir "actos afirmativos, posteriores al recibo del cheque, que claramente" indiquen la aceptación de la oferta por parte del acreedor. Íd., pág. 243. A su vez, se reiteró que el ofrecimiento de pago tiene que estar acompañado de "declaraciones o actos que claramente indiquen que el pago ofrecido por el deudor al acreedor es en pago total, completo y definitivo de la deuda existente entre ambos". Íd., pág. 242.

La última vez que este Tribunal tuvo ante su consideración la doctrina de pago en finiquito fue en Gilormini Merle v. Pujals Ayala, 116 DPR 482 (1985), donde se rechazó la resolución sumaria del pleito por la doctrina del pago en finiquito. Ello, en específico, por la falta de certeza sobre la aceptación del cheque, pues la acreedora tachó, en presencia del deudor, el lenguaje sobre la naturaleza total del pago.

En suma, el desarrollo de esta doctrina jurisprudencial exige para su configuración inequívoca: (1) una reclamación ilíquida o sobre la cual exista una controversia bona fide; (2) un ofrecimiento de pago en buena fe por parte del deudor y en ausencia de opresión o ventaja indebida del deudor, y (3) una aceptación del ofrecimiento con claro entendimiento por parte del acreedor.

Ahora, si bien el pago en finiquito ha sido integrado a nuestro ordenamiento, principalmente, por la vía jurisprudencial, en lo relevante a esta controversia, ésta también fue codificada en la <u>Ley de Transacciones Comerciales</u>, Ley Núm. 208-1995, 19 LPRA sec. 401 <u>et seq</u>., la cual dispone que:

> (a) Si una persona contra quien se hace una reclamación prueba que: (i) ofreció de **buena fe** un instrumento al reclamante en pago total de la reclamación, (ii) el monto de la reclamación no había sido liquidado o estaba sujeto a una controversia bona fide, y (iii) el reclamante obtuvo el pago del instrumento, los siguientes incisos serán de aplicación.

> (b) A menos que aplique el inciso (c) de esta sección, si la persona contra quien se establece la reclamación prueba que el instrumento o una comunicación escrita que le acompaña contiene una declaración conspicua a los efectos de que el instrumento fue ofrecido en pago total de la reclamación, la reclamación queda saldada.

> (c) Sujeto a lo dispuesto en el inciso (d) de esta sección, una reclamación no queda saldada bajo las disposiciones del inciso (b) de esta sección en cualquiera de las siguientes situaciones:

> . . . . . . . .

> (2) El reclamante, sea o no una organización, prueba que dentro de los noventa (90) días siguientes al pago del instrumento, ofreció el repago de la cantidad de dinero especificada en el instrumento a la persona contra quien se establece la reclamación. Este inciso no será de aplicación si el reclamante es una organización que envió una declaración en cumplimiento con lo dispuesto con la cláusula (1)(i) de este inciso.

> (d) Se salda una reclamación si la persona contra quien se incoa prueba, que dentro de un tiempo razonable con anterioridad al inicio del procedimiento de cobro del instrumento, el reclamante o un agente de éste con responsabilidad directa respecto a la obligación en disputa, sabía que el instrumento fue ofrecido en saldo total de

la reclamación. (Énfasis suplido). 19 LPRA sec. 611.

En lo pertinente, el propio estatuto define "buena fe" como "la honestidad de hecho y la observancia de las normas comerciales razonables de trato justo". 19 LPRA sec. 503. De otra parte, en cuanto a lo que se refiere a una declaración "conspicua", la ley exige que esté "redactado de tal forma que una persona razonable, que será afectada por el mismo, deberá notarlo. Un encabezamiento escrito en letras mayúsculas (e.g CARTA DE PORTE NO NEGOCIABLE) es conspicuo. Un lenguaje en el texto de un formulario es 'conspicuo' si está escrito en letras más grandes o en otro tipo de letra o color". 19 LPRA sec. 451.

Recientemente, en <u>Feliciano Aguayo v. Mapfre Panamerican Insurance Company</u>, supra, este Tribunal examinó con detenimiento la jurisprudencia y los estatutos antes citados y se expresó sobre su aplicación armoniosa en pleitos entre asegurados y aseguradoras. Allí concluimos que, examinada la figura del pago en finiquito dentro del contexto del campo de seguros y en atención a las regulaciones particulares de tal industria, la relación aseguradora-asegurado y las normas aplicables a los cheques como instrumentos negociables, nuestro ordenamiento exige que se vele por el cumplimiento de varios requisitos específicos para que se configure la transacción al instante.

En tal determinación, este Tribunal rechazó que la figura se manifieste, meramente, porque se constate la ocurrencia de

un ofrecimiento de pago, una notificación del cierre de la reclamación y el cambio de un cheque. Debido a las particularidades propias de la industria de seguros, los tribunales deben evaluar la totalidad de las circunstancias y dar por cumplidos a cabalidad los requisitos de la doctrina y las exigencias estatutarias. Es decir, debe analizarse la iliquidez o la controversia bona fide de la reclamación; si el pago se emitió al amparo o en cumplimiento de un mandato estatutario, y si ocurrió en ausencia de opresión o ventaja indebida, particularmente dentro del contexto de la relación asegurado-aseguradora. A su vez, debe examinarse la existencia de circunstancias claramente indicativas para el acreedor de lo que representaba el cheque; si ocurrió una orientación clara a tales fines, y si la carta que envió la aseguradora cumplió con las reglas de trato justo y advirtió de forma conspicua que el instrumento fue ofrecido en pago total de la reclamación. Igualmente, debe evaluarse lo relativo a las salvaguardas del Código de Seguros y las normas administrativas relacionadas a éste, así como lo estatuido sobre la buena fe y el trato justo en la Ley de Transacciones Comerciales. Finalmente, también debe constatarse el entendimiento claro del asegurado al cambiar al cheque, en particular, a la luz de las condiciones bajo las cuales lo aceptó.

En lo pertinente a esta controversia en particular y directamente relacionado al requerimiento de un claro entendimiento por parte del acreedor, vemos que, en este caso,

la aseguradora exigió que el asegurado firmara una especie de relevo de responsabilidad previo a entregar el pago. Ello, de por sí, no puede dar por cumplido el requerimiento de claro entendimiento, pues aún está sujeto al análisis ante esbozado. Según ha destacado este Tribunal, "la renuncia de un derecho afirmativamente concedido por ley requiere que la parte renunciante conozca de forma cabal su derecho y haya tenido la intención clara de abandonarlo". Feliciano Aguayo v. Mapfre Panamerican Insurance Company, supra.

Asimismo, es pertinente recordar que, en Rosario v. Nationwide Mutual, 158 DPR 775 (2003), este Tribunal rechazó disponer de una reclamación en contra de una aseguradora meramente porque la reclamante había firmado un relevo. Ello, pues, era necesario aclarar la intención real de la reclamante al firmar el relevo y auscultar las supuestas actuaciones dolosas de la aseguradora que le llevaron a transigir.[11] Íd.,

---

[11] En tal caso, este Tribunal indicó que "no hay duda de que la demandante peticionaria firmó el referido relevo general e incondicional en las fechas antes mencionadas. Sin embargo, ¿bajo qué condiciones las suscribió? ¿Qué entendía ella sobre el verdadero alcance del relevo suscrito? ¿Qué aseveraciones le comunicó el ajustador que la llevaron a tal entendimiento y, en consecuencia, a firmar el relevo? Todas estas interrogantes son importantes ya que, de llegar a probarse las alegaciones de la señora Rosario Ortiz, el consentimiento de ésta pudo haber estado viciado, lo cual podría anular por dolo el relevo de responsabilidad suscrito." Íd., págs. 781-782. A su vez, reconoció que "[a]l atender estas alegaciones a la luz de factores como la edad y la poca educación de la demandante peticionaria, así como el poder económico y el conocimiento especializado de [la aseguradora], entendemos que existe una sustancial controversia de hechos en cuanto a si medió dolo en el perfeccionamiento del contrato de la transacción de marras." Íd., págs. 782-783.

pág. 781. Así, reafirmó la necesidad de "proteger al consumidor en casos de contratos como el de [pólizas de seguros], que de ordinario son la parte más débil en este tipo de transacción." Íd., pág. 783.

Expuesto el derecho aplicable, procedemos a discutir su aplicación a esta controversia.

### III

En su petición ante este Tribunal, el señor Adorno Maldonado insiste en que no se configuró un pago en finiquito, pues no consintió a ello, toda vez que la Cooperativa falló en su deber de orientarle y abusó de su ventaja indebida. Afirma que existen asuntos en controversia relacionados a su consentimiento y el cumplimiento por parte de la Cooperativa con las obligaciones que regulan la industria de seguros.

Por su parte, la Cooperativa arguye que el señor Adorno Maldonado no ha refutado ninguno de los hechos constitutivos del pago en finiquito. Reafirma que constatar la ausencia de prácticas desleales no representa uno de los requisitos de la doctrina, como tampoco lo es orientar al acreedor sobre las consecuencias de aceptar el pago. Sostiene, además, que este no es el foro adecuado para litigar la razonabilidad de la oferta que extendió, la cual fue aceptada por el señor Adorno Maldonado.

Conforme se indicó, Feliciano Aguayo v. Mapfre Panamerican Insurance Company, supra, estableció los lineamientos que deben regir el análisis de controversias sobre la disposición sumaria de una reclamación en contra de

una aseguradora bajo la doctrina del pago en finiquito. Debido a las reglamentaciones específicas que imperan en la industria de seguros, los tribunales vienen obligados a constatar el cumplimiento cabal con todos los elementos de la doctrina y las exigencias estatutarias que regulan el campo. Es decir, en controversias de esta naturaleza, la doctrina no se ve satisfecha con la mera expedición de un cheque, la firma en un documento y el endoso del instrumento, pues, no sólo son los requisitos de la doctrina de pago en finiquito mucho más complejos, sino que las reglamentaciones estrictas que rigen el campo de seguros deben ser observadas en transacciones de esta índole.

Según se relató, el Tribunal de Primera Instancia rechazó la aplicación de la figura del pago en finiquito en esta coyuntura. Correctamente, el foro primario determinó que la documentación que proveyó la Cooperativa no era suficiente para acreditar si cumplió con su deber de apercibir al señor Adorno Maldonado de forma efectiva con respecto a las consecuencias de cambiar el cheque o de la posibilidad de solicitar una reconsideración del ajuste. Asimismo, dictaminó que ésta tampoco permitía concluir que el señor Adorno Maldonado aceptó el pago como uno en finiquito.

Sin embargo, el Tribunal de Apelaciones revocó la Resolución del Tribunal de Primera Instancia y determinó que estuvieron presentes los elementos del pago en finiquito. Asimismo, descartó que el advertir al acreedor sobre las

consecuencias de aceptar el pago fuese un requisito establecido y necesario de la figura.

Surge con claridad, pues, que el foro apelativo intermedio limitó el análisis de la controversia a los elementos más básicos de la doctrina del pago en finiquito: la emisión de un cheque y su endoso. En consecuencia, el dictamen recurrido abandonó su responsabilidad de constatar la concurrencia de todos los requisitos de la figura en todas sus complejidades. De entrada, nada se dispuso sobre la condición de la deuda y sus características, a saber, si el pago ofrecido se extendió al amparo o en cumplimiento de un mandato estatutario, pues este hecho influye sobre la liquidez de la suma y la existencia de la controversia bona fide.

Asimismo, el estudio del segundo requisito, el ofrecimiento de pago, está despojado de conclusión alguna sobre la buena fe y la ausencia de opresión o ventaja indebida que deben caracterizarlo. Por demás, tal oferta fue descontextualizada de los eventos específicos que la motivó, como también de la relación entre el asegurado y la aseguradora. Finalmente, el tercer requisito se dio por satisfecho por el endoso del cheque y la firma del señor Adorno Maldonado en un relevo que surgió de un contrato de adhesión. Ello sin conclusión alguna con respecto al claro entendimiento por parte del acreedor que debe permear la transacción.

Por demás, la determinación del Tribunal de Apelaciones está huérfana de un análisis de las salvaguardas que ofrecen

el Código de Seguros y la Ley de Transacciones Comerciales a los acreedores. A saber, si la advertencia en la documentación era conspicua y cumplió con las normas de trato justo, y si el asegurado recibió una orientación inequívoca mediante representaciones ciertas y explicaciones razonables hasta alcanzar un entendimiento claro. De esta forma, el foro apelativo intermedio obvió toda discusión profunda y compleja con respecto a las protecciones que le amparan a los asegurados en nuestro ordenamiento, a pesar de que el señor Adorno Maldonado, precisamente, alegó violaciones a tales garantías.

A mi juicio, en este caso, como todos los otros en los que se aplicó sumariamente la doctrina del pago en finiquito ceñido a una interpretación somera de sus requisitos y descontextualizado de las reglamentaciones de la industria, perduran controversias que debieron obstruir tal disposición. Entre éstas, persisten dudas sobre el claro entendimiento del señor Adorno Maldonado sobre la naturaleza del cheque y la <u>Declaración jurada en comprobación de pérdida</u>, las condiciones bajo las que endosó tales documentos y si comprendía el alcance y las consecuencias de tal acción. De forma similar, no puede determinarse que la Cooperativa cumplió con las normas razonables de buena fe y trato justo que rigen en la industria de seguros o que no incurrió en prácticas desleales en el trámite de esta reclamación.

Hoy somos consecuentes en que el endoso de un cheque o un relevo, las cuales no cumplen con las garantías puestas en

nuestro ordenamiento para velar por la parte más débil en la transacción, no puede ser causa para despachar sumariamente el reclamo de justicia de asegurados tras el azote devastador del huracán María. En consecuencia, extiendo un llamado a los tribunales a garantizar el cumplimiento de todos los requisitos de la doctrina y las exigencias estatutarias antes de ponerle fin a un pleito de forma sumaria en controversias de esta índole.

**IV**

Por los fundamentos antes expresados, estoy conforme con revocar la Sentencia del Tribunal de Apelaciones bajo lo pautado en Feliciano Aguayo v. Mapfre Panamerican Insurance Company, supra.


                                        Luis F. Estrella Martínez
                                        Juez Asociado